**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DEPOSITORS INSURANCE COMPANY, )<br>and AMCO INSURANCE COMPANY, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>EVAN-TALAN HOMES, INC., CORY )<br>CHILDRESS, PATRICIA PHEFFER, as an )<br> individual, and PATRICIA PHEFFER, as )<br>Trustee of the MELVIN AND PATRICIA )<br>PHEFFER LIVING TRUST DATED )<br>OCTOBER 15, 2021, )<br> )<br>Defendants. ) | Case No. _____ |

**C<small>OMPLAINT</small>**

In support of their request for relief against and Evan-Talan Homes, Inc., Corey Childress,

Patricia Pheffer, individually and as Trustee of the Melvin and Patricia Pheffer Living Trust Dated

October 15, 2021 (the "Trust") (collectively, "Defendants"), Plaintiffs allege as follows:

**The Parties**

1.    Depositors Insurance Company ("Depositors") is an Iowa company that is registered with

the Kansas Commissioner of Insurance but does not have its principal place of business in Kansas.

2.    AMCO Insurance Company ("AMCO") is an Iowa company that, though registered with

the Kansas Commissioner of Insurance, does not have its principal place of business in Kansas.

3.    Evan-Talan Homes, Inc. is a Kansas entity with its principal place of business in Kansas

and may be served with process by serving its registered agent National Registered Agents, Inc.

of Kansas at 112 S.W. 7th St., Topeka, Kansas 66603.

4.    Cory Childress is a Kansas resident.

5.    Patricia Pheffer is a Kansas resident and trustee of the Trust.

## Jurisdiction and Venue

6.   Plaintiffs brings this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

7.   Jurisdiction in this Court is proper under 28 U.S.C. § 1332 because Plaintiffs and Defendants are diverse and, even though Plaintiffs seek a declaratory judgment, more than $75,000.00 is in controversy.

8.   All defendants are Kansas residents for purposes of venue under 28 U.S.C. § 1391.

9.   The acts and omissions giving rise to this action occurred in Kansas.

10. The Court thus has personal jurisdiction over all parties and is a proper venue for the case.

## The Policies

11. During all relevant time periods, Evan-Talan Homes, Inc. was insured by Depositors under Commercial General Liability Coverage form CG0001 (04/13) with coverage limits of $1,000,000 per occurrence ("GL Policy"), a true and correct copy of which is attached hereto as Exhibit A.

12. Cory Childress and Evan-Talan Homes, Inc. are both Insureds under the GL Policy with regard to the Underlying Lawsuit.

13. The GL Policy contains three coverages, but only Coverage A could potentially provide coverage to Cory Childress and Evan-Talan Homes, Inc. for the Underlying Lawsuit.

14. The insuring language of Coverage A of the GL Policy, subject to the terms of the rest of the GL Policy, reads as follows:

> pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Ex. A at NW 0361, § I(1)(a).

15. During all relevant time periods, Evan-Talan Homes, Inc. was insured by AMCO under Commercial Umbrella Policy form UMB0002 (04/13) with coverage limits of $2,000,000 per occurrence ("Umbrella Policy"), a true and correct copy of which is attached hereto as Exhibit B.

16. The insuring language of Coverage A of the Umbrella Policy, subject to the terms of the rest of the Umbrella Policy, reads as follows:

> **1.** Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:
>
> **a.** any contrary provision contained in this policy; or
>
> **b.** any provision in this policy for which a similar provision is not contained in "underlying insurance".
>
> . . . .
>
> **4.** Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

Ex. B at NW 0418, § A.

17. The insuring language of Coverage B of the Umbrella Policy, subject to the terms of the rest of the Umbrella Policy, reads as follows:

> **1.** Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.
>
> . . . .
>
> **5.** Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have

been afforded except for the exhaustion of the limits of insurance of "underlying insurance".

. . . .

**7.** If we are prevented by law from paying on behalf of the "insured" for coverage provided under this insurance, then we will indemnify the" insured".

*Id.* at § B.

### The Underlying Lawsuit

18. On May 6, 2021, Patricia Pheffer, as an individual and as Trustee of the Trust ("Pheffer") filed suit against Evan-Talan Homes, Inc. in the Tenth Judicial District District Court for Johnson County, Kansas, which was given case number 21-cv-02031 ("Underlying Lawsuit").

19. Pheffer's petition named only Evan-Talan Homes, Inc. as a defendant.

20. On June 17, 2021, Pheffer filed a First Amended Petition in the Underlying Lawsuit, adding Cory Childress as a defendant.

21. A true and correct copy of the First Amended Petition in the Underlying Lawsuit is attached hereto as Exhibit C and is incorporated into this Complaint by reference.

22. The Underlying Lawsuit arose from the construction of a new home in Leawood, Kansas, that took place over the course of approximately one year starting in May 2016.

23. Evan-Talan Homes, Inc. and the Pheffers memorialized their agreement in the Construction Contract, which was executed on May 6, 2016 (the "Contract"), attached hereto as Exhibit D.

24. The Contract, among other things, states that it is a fixed-price contract, defines the agreed-to scope of work, and recites the parties' respective obligations. *E.g.*, Ex. D §§ 1–3, NW 3213–14; *see also id.* at NW 3233–41 (Exhibit C to the Contract, describing building specifications).

25. For example, the Contract states that Evan-Talan Homes, Inc. was not responsible for any landscaping and describes the punch-list process to be used by the parties as the work neared completion. Ex. D at § 19, NW 3220–23; *id.* at NW 3236.

26. In the Underlying Lawsuit, Pheffer asserts the following causes of action against Evan-Talan Homes Inc.:

    a) Breach of Contract (Count 1)
    b) Breach of Express Warranty (Count 2)
    c) Wrongful Death (Count 3)
    d) Survival Action (Count 4)
    e) Breach of Implied Warranty (Count 5)
    f) Violation of the Kansas Consumer Protection Act ("KCPA") (Count 6)
    g) Negligence (Count 7)
    h) Negligent Misrepresentation (Count 8)
    i) Fraud and Fraudulent Nondisclosure (Count 9)
    j) Breach of the Duty of Good Faith and Fair Dealing (Count 10)

27. In the Underlying Lawsuit, Pheffer asserts the following causes of action against Cory Childress:

    a) Wrongful Death (Count 3)
    b) Survival Action (Count 4)
    c) Violation of the KCPA (Count 6)
    d) Negligence (Count 7)
    e) Negligent Misrepresentation (Count 8)
    f) Fraud and Fraudulent Nondisclosure (Count 9)

28. All causes of action asserted in the Underlying Lawsuit seek damages related to the existence and proliferation of fungi and mold in the Pheffers' home following construction.

29. In the Underlying Lawsuit, Pheffer alleges the Insureds were informed of "wallpaper bubbling in the front office" of the Pheffers' home after construction finished. Ex. C ¶¶ 35, 40.

30. Pheffer alleges that the wallpaper issue was indicative of moisture intrusion issues, which led to "substantial mold growth" that "was apparently so extensive already that portions of drywall patch were sinking into the wall and had to be repaired and re-patched before the wallpaper was rehung by" Evan-Talan Homes, Inc. *Id.* ¶¶ 42–43.

31. Pheffer further alleges that any steps taken by the Insureds to rectify the moisture intrusion issues were insufficient and negligent, which caused "ongoing issues" with "moisture behind wallpaper." *Id.* ¶ 49; *id.* ¶¶ 44–54.

32. Ultimately, the Underlying Lawsuit alleges that these ongoing moisture issues led to the mold and fungi proliferation that caused Melvin Pheffer to contract a fungal infection in March 2020 and that the infection ultimately caused his death.

33. The Underlying Lawsuit also alleges that Pheffer has incurred, or will incur, more than $126,000 in expenses to repair all alleged construction defects that led to the mold and fungi at issue, including replacing or repairing landscaping and remediating the mold and fungi growth.

34. The Underlying Lawsuit blames the mold and fungi proliferation on moisture intrusion and retention issues caused by Evan-Talan Homes, Inc.'s allegedly negligent construction and alleged misrepresentations or nondisclosures from Evan-Talan Homes, Inc. and Cory Childress.

35. Evan-Talan Homes, Inc. and Cory Childress (collectively, the "Insureds") submitted a request for coverage under the GL Policy to Depositors.

36. In response to the Insureds' request, Depositors agreed to provide the Insureds with a defense in the Underlying Lawsuit subject to a complete and full reservation of its rights.

**<u>Count One: Declaratory Judgment Finding That the GL Policy's Fungi or Bacteria Exclusion Precludes Coverage for All Claims and Damages in the Underlying Lawsuit</u>**

37. Depositors incorporates and realleges paragraphs 1 through 36 as though fully set forth herein.

38. The GL Policy's "Fungi or Bacteria" exclusion states as follows regarding bodily injury and property damage coverage:

> **2. Exclusions**
>
> This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

Ex. A at NW 0386.

39. The GL Policy's "Fungi or Bacteria" exclusion defines "fungi" as "any type or form of fungus, including mold or mildew and any mycoloxins, spores, scents or byproducts produced or released by fungi." *Id.* § C.

40. The GL Policy defines "Property Damage" as

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

*Id.* at NW 0375, § V(17).

41. The GL Policy defines "Bodily Injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at NW 0373, § V(3).

42. The Underlying Lawsuit's wrongful death and survival action claims rest entirely on the allegation that Mr. Pheffer was injured by, and died from, exposure to mold and/or fungi.

43. The Underlying Lawsuit's wrongful death (Count 3) and survival action (Count 4) claims therefore seek damages for Bodily Injury caused by fungi and/or mold due to the Insureds' negligent or wrongful conduct.

44. All of the other causes of action asserted in the Underlying Lawsuit—negligence (Count 7), negligent misrepresentation (Count 8), contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), and KCPA (Count 6)—seek damages for abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, and assessing the effects of the presence of mold, mildew, or fungi in the Pheffers' home. *See supra* ¶ 32.

45. The Underlying Lawsuit's negligence (Count 7), negligent misrepresentation (Count 8), contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), and KCPA (Count 6) claims also seek damages for Property Damage caused by fungi, mold, or mildew.

46. Accordingly, the GL Policy's Fungi or Bacteria Exclusion precludes coverage for all claims asserted, and damages sought (including punitive damages), in the Underlying Lawsuit.

47. Wherefore, Depositors requests that the Court issue a declaration finding that the GL Policy's Fungi or Bacteria Exclusion excludes coverage for all claims asserted in the Underlying Lawsuit, thereby relieving Depositors of any and all coverage obligations to the Insureds.

### Count Two: Declaratory Judgment Finding That No Coverage Exists Under the GL Policy for Pheffer's Contract, Warranty, Fraud, Misrepresentation, KCPA, and Related Claims.

48. Depositors incorporates and realleges paragraphs 1 through 47 as though fully set forth herein.

49. Depositors is entitled to a declaratory judgment finding that the GL Policy does not provide coverage for the Underlying Lawsuit's contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), negligent misrepresentation (Count 8), and KCPA claims (Count 6) as well as any claim Pheffer has, or may have, to punitive damages.

50. To the extent Pheffer's contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), negligent misrepresentation (Count 8), KCPA (Count 6), and punitive damages claims seek damages for something other than Bodily Injury or Property Damage, the GL Policy does not provide coverage. *See supra* ¶ 15 (reciting insuring language of GL Policy Coverage A).

51. Accordingly, the Underlying Lawsuit seeks damages that are not within the scope of coverage provided by the GL Policy.

52. Wherefore, Depositors requests that the Court issue a declaration finding that the GL Policy does not provide the Insureds with coverage for the Underlying Lawsuit's contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), negligent misrepresentation (Count 8), and KCPA (Count 6) claims as well as any claim Pheffer has, or may have, to punitive damages.

**Count Three: Declaratory Judgment Finding That Exclusion 2(b) of the GL Policy Precludes Coverage for The Underlying Lawsuit's Contract and Warranty Claims.**

53. Depositors incorporates and realleges paragraphs 1 through 52 as though fully set forth herein.

54. Depositors is entitled to a declaratory judgment finding that the GL Policy's "Contractual Liability" exclusion precludes coverage for the Underlying Lawsuit's contract (Count 1), express warranty (Count 2), implied warranty (Count 5), and good faith and fair dealing (Count 10) claims.

55. Exclusion 2(b) provides, in relevant part, as follows:

**2. Exclusions**

This insurance does not apply to:

. . . .

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Ex. A at NW 0362, § I(2)(b).

56. Accordingly, the GL Policy excludes coverage for all damages sought in the Underlying Lawsuit due to the Contract, including all warranties and duties implied in the Contract by law.

57. Wherefore, Depositors requests that the Court issue a declaration finding that the GL Policy does not provide the Insureds with coverage for any and all damages sought in the Underlying Lawsuit due to the Contract, including all warranties and duties implied in the Contract by law, regardless of the cause of action or claim from which they arise.

<u>**Count Four: Declaratory Judgment Finding That GL Policy Exclusion 2(k) Precludes Coverage for Most Property Damage Damages Sought in the Underlying Lawsuit.**</u>

58. Depositors incorporates and realleges paragraphs 1 through 57 as though fully set forth herein.

59. Depositors is entitled to a declaratory judgment finding that the GL Policy's "Damage to Your Product" exclusion precludes coverage for all Property Damage damages sought in the Underlying Lawsuit for injuries to the home the Pheffers contracted Evan-Talan Homes, Inc. to build.

60. Exclusion 2(k) provides as follows:

**2. Exclusions**

This insurance does not apply to:

. . . .

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

Ex. A at NW 0365, § I(2)(k).

61. The GL Policy defines Your Product, in relevant part, as follows:

### 21. "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

*Id.* at NW 0376, § V(21).

62. The Pheffers' home is the Insureds' Product under the GL Policy.

63. Accordingly, the GL Policy excludes coverage for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

64. Wherefore, Depositors requests that the Court issue a declaration finding that the GL Policy's "Damage To Your Product" exclusion precludes coverage for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

**<u>Count Five: Declaratory Judgment Finding That Exclusion 2(l) of the GL Policy Precludes Coverage for Most Property Damage Damages Sought in the Underlying Lawsuit.</u>**

65. Depositors incorporates and realleges paragraphs 1 through 64 as though fully set forth herein.

66. Depositors is entitled to a declaratory judgment finding that the GL Policy's "Damage to Your Work" exclusion precludes coverage for all Property Damage damages sought in the Underlying Lawsuit for injuries to the home the Pheffers contracted Evan-Talan Homes, Inc. to build.

67. Exclusion 2(l) provides as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> . . . .
>
> **l. Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

Ex. A at NW 0365, § I(2)(l).

68. The GL Policy defines Your Work as follows:

> **22. "Your work":**
>
> **a.** Means:
>
> > **(1)** Work or operations performed by you or on your behalf; and
> >
> > **(2)** Materials, parts or equipment furnished in *connection with such work or operations.*
>
> **b.** Includes:
>
> > **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
> >
> > **(2)** The providing of or failure to provide warnings or instructions.

*Id.* at NW 0376, § V(22).

69. The GL Policy defines "products completed operations hazard" as follows:

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  (1) Products that are still in your physical possession; or

  (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

  (3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

*Id.* at NW 0375, § V(16).

70. Pursuant to the Underlying Lawsuit, the furnishing of materials, parts, and equipment as well as the home Evan-Talan Homes, Inc. built for the Pheffers constitutes Your Work under the GL Policy and the Umbrella Policy ("Insureds' Work").

71. The Insureds' Work on the Pheffers' home was performed on property that was not owned or rented by the Insureds.

72. The Insureds' Work on the Pheffers' home was complete, under the GL Policy's terms, by the time the Underlying Lawsuit was filed. *See supra* ¶ 69 (defining products-completed operations hazard).

73. The Insureds' Work on the Pheffers' home meets the GL Policy's definition of "products-completed operations hazard."

74. The Underlying Lawsuit seeks damages for Property Damage allegedly caused by the Insureds' Work.

75. Accordingly, the GL Policy excludes coverage for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home that Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

76. Wherefore, Depositors requests that the Court issue a declaration finding that the GL Policy's "Damage To Your Work" exclusion precludes coverage for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home that Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

### Count Six: Declaratory Judgment Finding GL Policy Exclusion 2(m) and Umbrella Policy Exclusion C(10) Preclude Coverage for Some or All Property Damage Damages Sought.

77. Plaintiffs incorporate and reallege paragraphs 1 through 76 as though fully set forth herein.

78. Depositors is entitled to a declaratory judgment finding that the GL Policy's "Damage To Impaired Property Or Property Not Physically Injured" exclusion precludes coverage for some or all damages for Property Damage sought in the Underlying Lawsuit.

79. Exclusion 2(m) of the GL Policy provides, in relevant part, as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> . . . .
>
> **m. Damage to Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Ex. A at NW 0365, § I(2)(m).

80. The GL Policy defines "Impaired Property" as

> tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

*Id.* at NW 0373, § V(8).

81. Exclusion C(10) of the Umbrella Policy is a copy of the GL Policy's Damage To Impaired Property Or Property Not Physically Injured (Exclusion 2(m)).

82. The Umbrella Policy and GL Policy use the same definition of Impaired Property.

83. Thus, if Exclusion 2(m) of the GL Policy applies to preclude coverage, Exclusion C(10) of the Umbrella Policy applies as well and excludes coverage under Umbrella Policy Coverage B.

84. The Underlying Lawsuit seeks damages for Property Damage to work and products other than the Insureds' Work and the Insureds' Product that was allegedly caused by a dangerous condition created by the Insureds' Work and/or the Insureds' defective, inadequate, deficient construction of the Pheffers' home. *See, e.g.*, Ex. C ¶ 86(c); *see also* Ex. D at NW 3236 (noting that landscaping for the home was "to be contracted directly through homeowner").

85. The Underlying Lawsuit also seeks damages for Property Damage to work and products other than the Insureds' Work and the Insureds' Product that was allegedly caused by Evan-Talan Homes, Inc.'s failure to satisfy all of its obligations under the Contract and all warranties and duties implied in the Contract by law. *Id.*

86. In addition, the Underlying Lawsuit seeks damages for Property Damage to property that was not actually injured and alleges that such Property Damage was caused by the Insureds' defective, inadequate, deficient construction of the Pheffers' home and/or was caused by Evan-Talan Homes, Inc.'s failure to satisfy all of its obligations under the Contract and all warranties and duties implied in the Contract by law. *Id.*

87. Wherefore, Depositors requests that the Court issue a declaration finding that no coverage exists under the GL Policy for damages sought in the Underlying Lawsuit that are excluded by the "Damage To Impaired Property Or Property Not Physically Injured" exclusion (Exclusion 2(m)).

88. Wherefore, AMCO requests that the Court issue a declaration finding that no coverage exists under Coverage B of the Umbrella Policy for damages sought in the Underlying Lawsuit that are excluded by the "Damage To Impaired Property Or Property Not Physically Injured" exclusion (Exclusion C(10)).

**Count Seven: Declaratory Judgment Finding That Exclusion A(9) of the Umbrella Policy Precludes Coverage for All Damages Sought in the Underlying Lawsuit.**

89. AMCO incorporates and realleges paragraphs 1 through 88 as though fully set forth herein.

90. AMCO is entitled to a declaratory judgment finding that the Umbrella Policy's "Fungi Or Bacteria" exclusion precludes coverage—under Coverage A and Coverage B—for all damages sought in the Underlying Lawsuit.

91. Exclusion A(9) of the Umbrella Policy provides as follows:

> **A. Applicable to Coverage A and Coverage B**
>
> Under Coverage A and Coverage B, this insurance does not apply to:
>
> . . . .
>
> **9.** Fungi Or Bacteria
>
> > **a.** "Injury or damage", "bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of ingestion of, contact with, exposure to. existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such "injury or damage", "bodily injury", "property damage", or "personal and advertising injury".
> >
> > **b.** the abating, testing for, monitoring, cleaning up. removing, containing, treating. detoxifying. neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity. This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

Ex. B at NW 0421–22, § A(9).

92. The Umbrella Policy defines "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi." *Id.* at NW 0421, § A(3).

93. Thus, for the reasons alleged in paragraphs 37 through 47 above, the Umbrella Policy excludes coverage under Coverage A and Coverage B for all damages sought in the Underlying Lawsuit.

94. Wherefore, AMCO requests that the Court issue a declaration finding that the Umbrella Policy's "Fungi or Bacteria" exclusion excludes coverage under Coverage A and Coverage B for all claims asserted in the Underlying Lawsuit, thereby relieving AMCO of any and all coverage obligations to the Insureds.

### Count Eight: Declaratory Judgment Finding That No Coverage for the Underlying Lawsuit Exists Under Coverage A of the Umbrella Policy

95. AMCO incorporates and realleges paragraphs 1 through 94 as though fully set forth herein.

96. The insuring language of Coverage A of the Umbrella Policy, subject to the terms of the rest of the Umbrella Policy, reads as follows:

> **1.** Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:
>
> **a.** any contrary provision contained in this policy; or
>
> **b.** any provision in this policy for which a similar provision is not contained in "underlying insurance".
>
> . . . .
>
> **4.** Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

Ex. B at NW 0418, § A.

97. The GL Policy is the only Underlying Insurance that could potentially apply for the Underlying Lawsuit. *See id.* at NW 0430, § A(13); *id.* at NW 0416.

98. The Umbrella Policy defines the term "loss" as "those sums actually paid in the settlement or satisfaction of a claim which the "insured" is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage." *Id.* at NW 0428, § A(4).

99. For purposes of Coverage A, the Umbrella Policy defines the terms "injury or damage" as "any injury or damage covered in the applicable "underlying insurance" arising from an "occurrence"." *Id.* at NW 0430, § B(1).

100.     The Umbrella Policy incorporates all "exclusions applicable to the" Underlying Insurance from coverage under Coverage A. *Id.* at NW 0422, § B.

101.     For the reasons alleged in paragraphs 48 through 52 above, the GL Policy provides no coverage for the Underlying Lawsuit.

102.     For the reasons alleged in paragraphs 37 through 47 and 53 through 88 above, the GL Policy excludes coverage for the Underlying Lawsuit.

103.     Accordingly, no coverage for the Underlying Lawsuit exists under Coverage A of the Umbrella Policy.

104.     Wherefore, AMCO requests that the Court issue a declaration finding that no coverage for the Underlying Lawsuit exists under Coverage A of the Umbrella Policy, thereby relieving AMCO of all obligations under Coverage A of the Umbrella Policy.

### Count Nine: Declaratory Judgment Finding That No Coverage for the Underlying Lawsuit Exists Under Coverage B of the Umbrella Policy

105.     AMCO incorporates and realleges paragraphs 1 through 104 as though fully set forth herein.

106.     The insuring language of Coverage B of the Umbrella Policy, subject to the terms of the rest of the Umbrella Policy, reads as follows:

1.  Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

2.  Damages because of "bodily injury" include damages claimed by any person or organization for care or loss of services resulting at any time from "bodily injury".

. . . .

5.  Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance".

. . . .

7.  If we are prevented by law from paying on behalf of the "insured" for coverage provided under this insurance, then we will indemnify the" insured".

Ex. B at NW 0418, § B.

107.    The Umbrella Policy defines "Property Damage" as

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at NW 0432, § C(10).

108.    The Umbrella Policy defines "Bodily Injury" as "physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom." *Id.* at NW 0431, § C(2).

109.     The Underlying Lawsuit's contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), and KCPA (Count 6) claims do not seek damages for Bodily Injury, Property Damage, or Personal and Advertising Injury[1] as those terms are defined in by the Umbrella Policy.

110.     To the extent any of the damages sought in the Underlying Lawsuit—regardless of the cause of action—are held to be covered by the GL Policy, no coverage exists under Coverage B of the Umbrella Policy.

111.     Wherefore, AMCO requests that the Court issue a declaration finding that no coverage exists under Coverage B of the Umbrella Policy for any claims in the Underlying Lawsuit, thereby relieving AMCO of all obligations under Coverage B of the Umbrella Policy.

**Count 10: Declaratory Judgment Finding That Exclusion A(6) of the Umbrella Policy Precludes Coverage for All Property Damage Damages Sought in the Underlying Lawsuit.**

112.     AMCO incorporates and realleges paragraphs 1 through 111 as though fully set forth herein.

113.     AMCO is entitled to a declaratory judgment finding that the Umbrella Policy's "Damage To Your Product" exclusion precludes coverage—under Coverage A and Coverage B— for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

114.     Exclusion A(6) of the Umbrella Policy provides as follows:

>   **A. Applicable to Coverage A and Coverage B**
>
>   Under Coverage A and Coverage B, this insurance does not apply to:
> . . . .
>   **6.** Damage To "Your Product"
>
>   "Injury or damage" or "property damage" to "your product" arising out of it or any part of it.

Ex. B at NW 0421, § A(6).

---

[1] *See* Ex. B at NW 0432, § C(9) (defining "Personal and Advertising Injury" for Umbrella Policy Coverage B).

115.     The Pheffers' home constitutes "Your Product".

116.     Thus, for the reasons alleged in paragraphs 58 through 64 above, the Umbrella Policy excludes coverage under Coverage A and Coverage B for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

117.     Wherefore, AMCO requests that the Court issue a declaration finding that the Umbrella Policy's "Damage To Your Product" exclusion precludes coverage under Coverage A and Coverage B for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

**Count 11: Declaratory Judgment Finding That Exclusion A(7) of the Umbrella Policy Precludes Coverage for All Property Damage Damages Sought in the Underlying Lawsuit.**

118.     AMCO incorporates and realleges paragraphs 1 through 117 as though fully set forth herein.

119.     AMCO is entitled to a declaratory judgment finding that the Umbrella Policy's "Damage To Your Work" exclusion precludes coverage—under Coverage A and Coverage B—for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

120.     Exclusion A(7) of the Umbrella Policy provides as follows:

> **A. Applicable to Coverage A and Coverage B**
>
> Under Coverage A and Coverage B, this insurance does not apply to:
>
> . . . .
>
> **7.** Damage To "Your Work"
>
> "Injury or damage" or "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

Ex. B at NW 0421, § A(7).

121.     Pursuant to the Underlying Lawsuit, the furnishing of materials, parts, and equipment as well as the home Evan-Talan Homes, Inc. built for the Pheffers constitutes Your Work under the Umbrella Policy ("Insureds' Work").

122.     Thus, for the reasons alleged in paragraphs 65 through 76 above, the Umbrella Policy excludes coverage under Coverage A and Coverage B for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

123.     Wherefore, AMCO requests that the Court issue a declaration finding that the Umbrella Policy's "Damage To Your Work" exclusion precludes coverage under Coverage A and Coverage B for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

**Count 12: Declaratory Judgment Finding That Exclusion A(10) of the Umbrella Policy Precludes Coverage for Any Punitive Damages Sought in the Underlying Lawsuit.**

124.     AMCO incorporates and realleges paragraphs 1 through 123 as though fully set forth herein.

125.     Exclusion A(10) of the Umbrella Policy excludes coverage under Coverage A and Coverage B for "[a]ny punitive or exemplary damages fines or penalties." Ex. B at NW 0422.

126.     If Pheffer is allowed to pursue punitive damages in the Underlying Lawsuit, the Umbrella Policy excludes coverage for any punitive damages award entered against the Insureds. *See* Ex. C ¶¶ 115, 127, 150 (alleging reckless conduct).

127.     Wherefore, AMCO requests that the Court issue a declaration finding that the Umbrella Policy's "Punitive Damages" exclusion precludes coverage under Coverage A and Coverage B for all punitive damages sought, or that may be sought, in the Underlying Lawsuit.

**<u>Count 13: Declaratory Judgment Finding That Exclusion C(2) of the Umbrella Policy
Precludes Coverage Under Coverage B for Pheffer's Contract and Warranty Claims.</u>**

128.      AMCO incorporates and realleges paragraphs 1 through 127 as though fully set forth herein.

129.      AMCO is entitled to a declaratory judgment finding that the Umbrella Policy's "Contractual Liability" exclusion to Coverage B precludes coverage for the Underlying Lawsuit's contract (Count 1), express warranty (Count 2), implied warranty (Count 5), and good faith and fair dealing (Count 10) claims.

130.      Exclusion C(2) provides, in relevant part, as follows:

    **C.  Applicable to Coverage B Only**

        Under Coverage B, this insurance does not apply to:

    . . . .

        **2.**  Contractual Liability

            "Bodily injury", "property damage" or "personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

            This exclusion does not apply to liability for damages that the "insured" would have in the absence of the contract or agreement.

Ex. B at NW 0425, § C(2).

131.      Accordingly, the Umbrella Policy excludes coverage for all damages sought in the Underlying Lawsuit due to the Contract, including all warranties and duties implied in it by law.

132.      Wherefore, AMCO requests that the Court issue a declaration finding that the Umbrella Policy does not provide the Insureds with coverage under Coverage B for all damages sought in the Underlying Lawsuit due to the Contract, including all warranties and duties implied in the Contract by law, regardless of the cause of action or claim from which they arise.

**Prayer for Relief**

Wherefore, Plaintiffs pray for relief in their favor and an order declaring that:

133.       The GL Policy's "Fungi or Bacteria" exclusion excludes coverage for all claims asserted and damages sought (including punitive damages) in the Underlying Lawsuit, thereby relieving Depositors of any and all coverage obligations to the Insureds.

134.       The Umbrella Policy's "Fungi or Bacteria" exclusion excludes coverage under Coverage A and Coverage B for all claims asserted and damages sought (including punitive damages) in the Underlying Lawsuit, thereby relieving AMCO of any and all coverage obligations to the Insureds.

135.       The GL Policy does not provide the Insureds with coverage for the Underlying Lawsuit's contract (Count 1), fraud and fraudulent nondisclosure (Count 9), express warranty (Count 2), implied warranty (Count 5), good faith and fair dealing (Count 10), negligent misrepresentation (Count 8), and KCPA (Count 6) claims as well as any claim Pheffer has, or may have, to punitive damages.

136.       The GL Policy does not provide the Insureds with coverage for any and all damages sought in the Underlying Lawsuit due to the Contract, including all warranties and duties implied in the Contract by law, regardless of the cause of action or claim from which they arise.

137.       The GL Policy's "Damage To Your Product" exclusion precludes coverage for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

138.       The GL Policy's "Damage To Your Work" exclusion precludes coverage for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

139.     No coverage exists under the GL Policy for damages sought in the Underlying Lawsuit that are excluded by GL Policy's the "Damage To Impaired Property Or Property Not Physically Injured" exclusion.

140.     No coverage for the Underlying Lawsuit exists under Coverage A of the Umbrella Policy, thereby relieving AMCO of all obligations under Coverage A of the Umbrella Policy.

141.     No coverage for the Underlying Lawsuit exists under Coverage B of the Umbrella Policy, thereby relieving AMCO of all obligations under Coverage B of the Umbrella Policy.

142.     The Umbrella Policy's "Damage To Your Product" exclusion precludes coverage under Coverage A and Coverage B for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

143.     The Umbrella Policy's "Damage To Your Work" exclusion precludes coverage under Coverage A and Coverage B for all Property Damage damages sought in the Underlying Lawsuit for any injuries to the home Evan-Talan Homes, Inc. was contracted to build for the Pheffers.

144.     The Umbrella Policy's "Punitive Damages" exclusion precludes coverage under Coverage A and Coverage B for any and all punitive damages sought, or that may be sought, in the Underlying Lawsuit.

145.     No coverage exists under the Umbrella Policy for damages sought in the Underlying Lawsuit that are excluded by the Umbrella Policy's "Damage To Impaired Property Or Property Not Physically Injured" exclusion.

146.    The Umbrella Policy does not provide the Insureds with coverage under Coverage B for any and all damages sought in the Underlying Lawsuit due to the Contract, including all warranties and duties implied in the Contract by law, regardless of the cause of action or claim from which they arise.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiffs designate Wichita, Kansas, as the place of trial of this cause of action.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable herein.

Respectfully submitted by,

*/s/ Alexandra N.C. Rose*
Alexandra N.C. Rose, KS #27247
David E. Rogers, KS #13320
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Phone: 316.267.6371
Fax: 316.267.6345
Email: drogers@foulston.com
          nrose@foulston.com
*Attorneys for Plaintiff*